J-A13040-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| BENNETT WILLIAMS REALTY, INC. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FOUR BROTHERS REAL ESTATE, LLC | : | |
| AND LUCKY SPEROS INC. | : | |
| | : | No. 915 MDA 2022 |
| Appellant | : | |

Appeal from the Order Entered May 31, 2022
In the Court of Common Pleas of York County Civil Division at No(s):
2020-SU-001801

| | | |
|---|---|---|
| BENNETT WILLIAMS REALTY, INC. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FOUR BROTHERS REAL ESTATE LLC. | : | No. 957 MDA 2022 |
| AND LUCKY SPEROS INC. | : | |

Appeal from the Order Entered May 31, 2022
In the Court of Common Pleas of York County Civil Division at No(s):
2020-SU-001801

BEFORE:  BOWES, J., LAZARUS, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:                **FILED OCTOBER 11, 2023**

Four Brothers Real Estate LLC. and Lucky Speros Inc. ("Sellers") appeal

from the May 31, 2022, order entered in the Court of Common Pleas of York

County, which granted partial summary judgment in favor of Bennett Williams

_____

* Former Justice specially assigned to the Superior Court.

Realty, Inc. ("Broker"). Additionally, Broker cross-appeals from the May 31, 2022, order.[1] After a careful review, we quash this appeal.

The relevant facts and procedural history are as follows: On September 1, 2020, Broker filed a complaint against Sellers averring that, on September 6, 2019, the parties executed an exclusive listing and authorization to sell agreement ("the Brokerage Agreement"). The Brokerage Agreement was effective from September 4, 2019, to March 31, 2020, and related to Broker's exclusive right to sell the real estate and improvements at 3245 Susquehanna Trail, York, PA ("the Property").

Under the Brokerage Agreement, Sellers agreed to pay Broker a six percent commission fee if the Property was sold during the term of the Agreement. Further, the Brokerage Agreement provided that "Broker is entitled to a six percent commission fee for any transaction with any prospective buyer identified by Broker and who is actively engaged with Broker at the termination of the Brokerage Agreement that are consummated within one hundred and eighty days of the termination of the Brokerage Agreement." Broker's Complaint, filed 9/1/20, at 3.

Additionally, the Brokerage Agreement provided that, if Broker instituted suit to collect any compensation and successfully secured an award

---

[1] Sellers' appeal is docketed at 915 MDA 2022 while Broker's cross-appeal is docketed at 957 MDA 2022. By order entered on November 7, 2022, this Court *sua sponte* consolidated the appeal and cross-appeal.

or judgment, Sellers were required to pay all costs incurred by Broker in connection with the action. Broker alleged that, under the Pennsylvania Commercial Real Estate Broker Lien Act, 68 P.S. §§ 1051-63, Broker was entitled to recover costs, fees, and prejudgment interest if seeking to enforce a lien arising out of the Brokerage Agreement.

Broker averred that, while the Brokerage Agreement was in effect, it actively engaged in the negotiation and sale of the Property to Queen Street Messina, LLC ("Queen Street"). On or about November 13, 2019, Sellers entered into an agreement for the sale of the Property to Queen Street for $550,000.00, but they executed one or more extensions of the agreement due to the Covid-19 pandemic. Still, the Property remained under contract as of the termination date of the Brokerage Agreement; however, on May 28, 2020, the agreement of sale between Sellers and Queen Street was terminated.

Broker indicated that, two months later, on or about July 25, 2020, Sellers entered into a second agreement to sell and convey the Property to Queen Street for $550,000.00. Asserting it was owed a brokerage fee of $33,000.00 in connection with the sale, Broker served a notice of intent to file a claim for a broker's lien on Sellers and Queen Street. On August 12, 2020, Broker filed a notice of a lien on the Property in the amount of $33,000.00, plus all costs, attorneys' fees, and interest.

While the sale was still pending, Sellers and Queen Street agreed to substitute 3245 Susquehanna LLC (Susquehanna LLC) as the purchaser of the Property. Francesco J. Messina, who was the sole owner of Queen Street, was a one-third owner of Susquehanna LLC, and the remaining ownership interest was held by two investors. Broker alleged Susquehanna LLC is a successor in interest to or affiliate of Queen Street. Accordingly, on August 18, 2020, Broker served a notice of intent to file a broker's lien on Sellers and Susquehanna LLC, and on August 24, 2020, Broker filed a second notice of lien on the Property in the amount of $33,000.00, plus all costs, attorneys' fees, and interest.

Prior to the closing, on August 24, 2020, Broker, Sellers, and Susquehanna LLC executed an agreement to escrow monies related to the brokerage fee as provided for in the Brokerage Agreement. On this date, Sellers conveyed the property to Susquehanna LLC for $550,000.00 with $37,643.00 paid into escrow.

In its complaint, in Count 1, Broker presented a claim of breach of contract as to the Brokerage Agreement; in Count 2, Broker presented a claim of promissory estoppel, and in Count 3, Broker presented a claim of unjust enrichment.

On October 16, 2020, Sellers filed an answer with new matter, and Broker filed a reply on October 26, 2020. Thereafter, on July 27, 2021, Broker filed a motion for summary judgment wherein it averred that, after the first

agreement of sale was terminated between Sellers and Queen Street, they "renegotiated the same sale agreement." Broker's Motion for Summary Judgment, filed 7/27/21, at 4. Specifically, on July 3, 2020, Sellers' attorney emailed Queen Street's attorney indicating Sellers had worked out an agreement to put the Property "back on the table." *Id.* Accordingly, on July 25, 2020, Sellers and Queen Street executed an agreement of sale, which was "in all respects…the same agreement" as before, except Sellers' attorney drafted the agreement of sale. *Id.* at 5.

Broker indicated that, on August 11, 2020, Queen Street sent Broker an email indicating "absent further written instructions, we will provide for payment of [the Broker's] commission on the settlement sheet." *Id.* However, one week later, Queen Street assigned its right to purchase the property to the newly formed entity, Susquehanna LLC, and less than a week later, the parties closed on the property. Broker contended there was no genuine issue of material fact, and it was entitled to judgment as a matter of law on its breach of contract claim. On September 9, 2021, Sellers filed a response in opposition to the motion for summary judgment.

By order and opinion entered on October 14, 2021, the trial court denied Broker's motion for summary judgment as to the breach of contract claim.[2]

---

[2] The trial court specifically noted Broker's motion for summary judgment related solely to its breach of contract claim and presented no issue as to the other two claims, *i.e.*, the claims for promissory estoppel and unjust enrichment.

The trial court found there were genuine issues of material fact. Specifically, the trial court concluded "the record is not fully developed at this point in time, and thus, [Sellers] shall be afforded the opportunity to take depositions or to otherwise obtain discovery in order to shed more light on the material facts in this case." Trial Court Opinion, filed 10/14/21, at 9.

On March 30, 2022, Broker filed a second motion for summary judgment wherein it again averred there were no genuine issues of material fact, and it was entitled to judgment as a matter of law on its breach of contract claim. Broker did not seek summary judgment as to its claims of promissory estoppel or unjust enrichment. On April 22, 2022, Sellers filed a response in opposition to Broker's second motion for summary judgment.

By order and opinion entered on May 31, 2022, the trial court held Broker's "motion for summary judgment filed on March 30, 2022, is GRANTED. Judgment is entered in the amount of $37,643.00 together with interest from August 24, 2020." Trial Court Order, filed 5/31/22, at 1.

On June 2, 2022, Broker filed a "Motion to Amend Order for Summary Judgment." Specifically, Broker argued that, with regard to its breach of contract claim, it was entitled to attorneys' fees, and, thus, Broker requested the trial court hold a hearing to assess the proper amount of attorneys' fees. Sellers filed a response in opposition.

On June 23, 2022, Sellers filed a notice of appeal from the trial court's May 31, 2022, partial summary judgment order. On June 29, 2022, Broker

filed a cross-appeal from the trial court's May 31, 2022, partial summary judgment order. On July 19, 2022, the trial court filed an order denying without prejudice Broker's motion to amend the order for summary judgment. Specifically, the trial court opined that, since notices of appeal had been filed to this Court, it was without jurisdiction to rule on Broker's motion to amend.[3]

On appeal, Sellers set forth the following issues in their "Statement of Questions Involved" (verbatim):

   A. Did the lower court err in finding that [Broker] was entitled to a commission when there existed no material issue of fact that [Broker] did not fulfill its obligation under the Commission Agreement?

   B. Did the lower court err in finding that the ultimate sale to 3245 Susquehanna, LLC merits a commission because there was a "significant connection" between Queen Street Messina, LLC, and 3245 Susquehanna, LLC?

Sellers' Brief at 7 (suggested answers omitted).

Moreover, in its cross-appeal, Broker sets forth the following issues in its "Statement of Questions Involved" (verbatim):

   A. Whether the trial court properly entered an order granting [Broker's] motion for summary judgment on its breach of contract claim where all parties agree that a contract existed and that Sellers breached the contract by failing to pay [Broker] a commission?

   B. Whether the trial court failed to properly award attorneys' fees to [Broker] despite the express fee-shifting provision in the contract awarding fees to [Broker] if it prevails in a suit against Sellers?

---

[3] The trial court directed Sellers and Broker to file Pa.R.A.P. 1925(b) statements, and both parties timely complied.

Broker's Brief at 2 (suggested answers and unnecessary capitalization omitted).

Initially, we note that, after receiving the notices of appeal and docketing statement, this Court issued show-cause orders on October 20, 2022. We questioned, *sua sponte*, whether the appealed-from order was a final order under Pa.R.A.P. 341, as asserted in the docketing statements. In separate responses, Sellers and Broker acknowledged Count 2 (promissory estoppel) and Count 3 (unjust enrichment) of Broker's complaint were not disposed of by the trial court. However, both parties averred the trial court's order granting summary judgment as to Count 1 (breach of contract) of the complaint "effectively ends the litigation or disposes of the entire case." Broker's Response, filed 10/24/22, at 1; Sellers' Response, filed 11/1/22, at 1. Both parties requested this Court consider the "practical ramifications" of the trial court's May 31, 2022, order. This Court discharged the show-cause orders and deferred the issue of appellate jurisdiction to this merits panel.

Before we may address the merits of the appellate claims, we must first determine whether we have jurisdiction to entertain this appeal. A court's jurisdiction is a threshold issue that the court may consider at any time. **See McCutcheon v. Philadelphia Elec. Co.**, 567 Pa. 470, 788 A.2d 345, 349 (2002). Accordingly, we must determine whether the trial court's May 31, 2022, order is appealable since "the appealability of an order directly

implicates the jurisdiction of the court asked to review the order." ***Estate of***

***Considine v. Wachovia Bank***, 966 A.2d 1148, 1151 (Pa.Super. 2009).

Pennsylvania law makes clear:

[A]n appeal may be taken from: (1) a final order or an order certified as a final order (Pa.R.A.P. 341); (2) an interlocutory order as of right (Pa.R.A.P. 311); (3) an interlocutory order by permission (Pa.R.A.P. 312, 1311, 42 Pa.C.S.A. § 702(b)); or (4) a collateral order (Pa.R.A.P. 313).

***Stahl v. Redcay***, 897 A.2d 478, 485 (Pa.Super. 2006).

Here, Sellers and Broker aver they have taken appeals from a final

order.[4] Under the Pennsylvania Rules of Appellate Procedure, "an appeal may

be taken of right from any final order of a…trial court." Pa.R.A.P. 341(a). By

definition, a final order "disposes of all claims and of all parties….[or] is

entered as a final order pursuant to paragraph (c) of this Rule…." Pa.R.A.P.

341(b). Paragraph (c) provides:

When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the trial court or other government unit may enter a final order as to one or more but fewer than all of the claims and parties only upon an express determination that an immediate appeal would facilitate resolution of the entire case. Such an order becomes appealable when entered. **In the absence of such a determination and entry of a final order, any order or other form of decision that adjudicates fewer than all the claims and parties shall**

_____

[4] We note that, in their appellate briefs, neither party analyzes this Court's jurisdiction. Sellers summarily indicate this Court has jurisdiction under 42 Pa.C.S.A. § 742, which provides this Court has appellate jurisdiction of appeals from final orders of the court of common pleas. Broker did not set forth a statement of jurisdiction in its brief.

**not constitute a final order.** In addition, the following conditions shall apply:

    (1)    An application for a determination of finality under paragraph (c) must be filed within 30 days of entry of the order. During the time an application for a determination of finality is pending, the action is stayed.

    (2)    Unless the trial court or other government unit acts on the application within 30 days after it is filed, the trial court or other government unit shall no longer consider the application and it shall be deemed denied.

    (3)    A notice of appeal may be filed within 30 days after entry of an order as amended unless a shorter time period is provided in Pa.R.A.P. 903(c). Any denial of such an application is reviewable only through a petition for permission to appeal under Pa.R.A.P. 1311.

Pa.R.A.P. 341(c) (bold added).

Here, there is no dispute Broker presented three claims in its complaint, *i.e.*, breach of contract, promissory estoppel, and unjust enrichment. However, Broker requested, and the trial court's May 31, 2022, order granted, summary judgment solely as to the breach of contract claim. Simply put, the trial court's order did not dispose of Broker's claims for promissory estoppel or unjust enrichment, and the certified record reveals those claims remain pending in the trial court. As such, the trial court's May 31, 2022, order adjudicated fewer than all claims, and accordingly, it is not a final order as defined by Pa.R.A.P. 341(b). Moreover, we note neither party filed an application for determination of finality under Pa.R.A.P. 341(c).

- 10 -

In their responses to this Court's show-cause orders, Sellers and Broker both acknowledge that claims are pending in the trial court; however, citing to *Kulp v. Hrivnak*, 765 A.2d 796 (Pa.Super. 2000), they urge this Court to exercise its jurisdiction on the basis the "practical ramification of the order will be to dispose of the case, making review appropriate." *Kulp*, 765 A.2d at 798.

Twenty years ago, this Court rejected the statement from *Kulp* as being no longer good law. In *Brickman Group, Ltd. v. CGU Ins. Co.*, 829 A.2d 1160 (Pa.Super. 2003), we explained as follows:

> [The appellant] urges that, in those cases where an order does not fit any of these [Rule 341(b)] definitions perfectly, this Court should "consider whether the practical ramifications of the order will be to dispose of the case, making review appropriate." *Kulp*, 765 A.2d at 798. We first note that the preceding language from *Kulp* traces its origin to caselaw evaluating the appealability of orders prior to the 1992 amendment of Rule 341. *See id.*
>
> This Court in *Robert H. McKinney, Jr. Associates, Inc. v. Albright*, 632 A.2d 937 (Pa.Super. 1993), explained the significance of the 1992 amendment:
>
>> Case law which interpreted the earlier provisions of Rule 341, considered final all orders which had a practical consequence of putting a litigant out of court. These included instances where a party was dismissed from a case or, in some circumstances, where some, but not all of the counts of a multi-count complaint were dismissed. Thus, finality was often determined without regard to the fact that the litigation did not end as to all claims or all parties. However, under the amended version of Rule 341, as quoted above, this is no longer the case for actions commenced after July 6, 1992. Under the [current] rule, an appeal may not be taken from an order dismissing less than all claims or all parties from a case. An exception to this general rule exists under

- 11 -

subparagraph (c), whenever an express determination has been made by the trial court that an immediate appeal would facilitate resolution of the entire case.

*Id.* at 938–39.

[The appellant] maintains that the conditional nature of [the appellee's] claims against the additional defendants rendered them essentially dismissed upon the granting of summary judgment in favor of [the appellee]. Therefore, [the appellant] asserts we should consider that the "practical ramification" of the order is to dispose of the entire case. Yet, it has been firmly established since the promulgation of the 1992 amendment to Pa.R.A.P. 341 that orders can be considered final and appealable only if they meet the requirements set forth in the rule. *Prelude, Inc. v. Jorcyk*, 695 A.2d 422 (Pa.Super. 1997) (*en banc*) (quashing appeals where order did not dismiss all defendants and finality determination under 341(c) was not pursued notwithstanding the fact that two remaining defendants had filed for federal bankruptcy protection)….

As stated by the majority in *Prelude*, 695 A.2d at 422, "Rule 341 is fundamental to the exercise of jurisdiction by this court. It is not surprising, therefore, that the rule has been rigorously applied." *Id.* at 424 (collecting cases). In *Prelude*, the case had been dismissed against all but two defendants. The two remaining defendants both had filed for federal bankruptcy protection. The Court held that the order dismissing less than all of the defendants was not a final, appealable order. The Court further noted that no finality determination pursuant to 341(c) had been pursued. Therefore, the Court held that it did not have jurisdiction over the case and quashed the appeal.

*Brickman Group, Ltd.*, 829 A.2d at 1163–64 (citation omitted). *See*

*Sunday v. Forester*, 110 MDA 2022, 2023 WL 2607443 (Pa.Super. 3/23/23)

(unpublished memorandum) (explaining and applying the holding of ***Brickman Group, Ltd.***).[5]

Similar to the appellant in ***Brickman Group, Ltd.***, Sellers and Broker argue for the same construction of Rule 341(b). They would have us overlook the absence of true finality as defined by Pa.R.A.P. 341 because, in their view, the appealed-from order "effectively" puts them out of court. As this Court sitting *en banc* has rejected that approach to Rule 341(b), we may not apply it in such a fashion. ***See Prelude***, ***supra***. To do so would be to exercise appellate jurisdiction that has yet to vest under Rule 341(a) due to the outstanding claims presented in Broker's complaint.[6] Simply put, the trial court's May 31, 2022, order did not dispose of "all claims and of all parties" as required by Rule 341(b).

Moreover, as indicated *supra*, neither Sellers nor Broker asked the trial court to certify "that an immediate appeal [from the order in question] would facilitate resolution of the entire case…within 30 days of entry of the order." Pa.R.A.P. 341(c)(1). "In the absence of such a determination and entry of a

---

[5] We cite ***Sunday***, ***supra***, for its persuasive value. ***See*** Pa.R.A.P. 126(b) (indicating non-precedential Superior Court decisions filed after May 1, 2019, may be cited for their persuasive value).

[6] We note that, pertaining to Broker's request for attorneys' fees in connection with the breach of contract claim, the trial court denied the request without prejudice to Broker's right to present the issue to the trial court after this Court relinquishes its jurisdiction. Thus, in addition to the two outstanding counts in Broker's complaint, Broker has not been "effectively put out of court" as to its request for attorneys' fees.

final order, any order or other form of decision that adjudicates fewer than all the claim and parties **shall not constitute a final order**." Pa.R.A.P. 341(c) (emphasis added). Nor did Sellers or Broker petition for permission to appeal with this Court regarding the appealed-from order. **See** Pa.R.A.P. 341(c)(3); Pa.R.A.P. 1311.

Furthermore, neither Sellers nor Broker presented or developed any argument that the trial court's order is a collateral order under Pa.R.A.P. 313.[7] Lastly, the order is not an interlocutory order appealable as of right under Pa.R.A.P. 311.

For all of the aforementioned reasons, we conclude the trial court's May 31, 2022, order is unappealable. Neither party requested judgment in its favor as to Counts two and three of Broker's complaint. Thus, by granting Broker's motion for partial summary judgment, the trial court granted judgment in Broker's favor only on Count one of the complaint. Since Counts two and three remain unresolved, the trial court's summary judgment order did not dispose of all claims and all parties. Accordingly, it is a non-appealable interlocutory order. We lack jurisdiction to decide the merits of the issues at this time, and, thus, we quash Sellers' appeal and Broker's cross-appeal.

---

[7] In any event, we note that one of the requirements of Pa.R.A.P. 313 is that "the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313(b). Here, there is no indication from the record that the rights in this case will be irreparably lost "if review is postponed until final judgment[.]" **Id.**

Appeals Quashed.


Judge Lazarus joins this Memorandum.

Judge Bowes files a Dissenting Memorandum.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary


Date: 10/11/2023